UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 02

RICHARD P. McCLURE,
MARTHA McCLURE,
       PLAINTIFFS

v.

**04 10826 RGS**

WILLIAM F. GALVIN;
SECRETARY OF THE COMMONWEALTH
OF MASSACHUSETTS,

ELIZABETH L. DELANEY; TOWN CLERK FOR THE
TOWN OF CHELMSFORD, MASSACHUSETTS, and

JANE DOE, CHELMSFORD ELECTION POLL CLERK

## AFFIDAVIT OF RICHARD P. McCLURE IN SUPPORT OF PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Now comes the plaintiff, Richard P. McClure, and being duly sworn does depose and say:

1. My name is Richard P. McClure and I reside at 8 Westford Street, Chelmsford, Middlesex County, Massachusetts. I am a practicing attorney, in good standing, licensed by the Commonwealth of Massachusetts since 1993 and admitted to practice before the Courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts.

2. On or about March 10, 2004, I visited the Chelmsford Town Clerk's office and un-

enrolled as a registered voter in the Republican party and registered as an "unenrolled" voter.

3. On or about 2/17/2004 I visited the Secretary of States Office, Elections Division, at One Ashburton Place, Boston, MA for the purpose of obtaining nomination papers for state senator in the third Middlesex district as an "unenrolled" candidate and did, in fact, obtain such papers. See Exhibit B.

4. At the aforestated time and place, I received a copy of the candidiate's guide issued by the defendant, Secretary of the Commonwealth, William F. Galvin, and reviewed the time/date constraints as they applied to various deadlines for filing said nomination papers and obtaining certification of voter status. See Exhibit F.

5. On March 2, 2004 I visited Precinct #1 in the town of Chelmsford for the purpose of voting in the presidential primary, approached the ballot clerk and gave my name and address. The clerk opened the registration log to the page of my name and address, verbally confirmed that I was Richard P. McClure and asked in which party primary would I like to vote. I asked for a democratic ballot.

6. I then observed the clerk to make a large "D" next to my name. I informed the clerk that I did not want to enroll in the Democratic party, that I was running as an independent candidate on the November 04 ballot, and needed to maintain my independent status. The clerk then informed me that I was not enrolling in the democratic party, that the "D" next to my name was for the purpose of recording which ballot I had requested and then proceeded to hand me a certificate which indicated that I was establishing my voter status as

"unenrolled." as proof that I was keeping my unenrolled status. See Exhibit C.

7. I took both the democratic primary ballot and the unenrolled status certificate to the ballot booth, signed the certificate, filled out the ballot and approached the exit clerk. The exit clerk then confirmed my name and address, took my unenrolled status certificate and then directed me to deposit my ballot in the ballot box. I cast my ballot into the ballot box.

8. On or about March 25, 2004, the defendant, Elizabeth L. Delaney, contacted me by phone and informed me that she had recently received an email from the Secretary of State's office instructing her not to certify the petitions of any unenrolled candidate who had voted in the March 2nd presidential primary. She stated that she recalled seeing me vote on March 2, 2004 at precinct #1, confirmed same, and informed me that based on the email I was no longer eligible to run for state office. When I inquired as to why would the ballot clerk have given me misinformation, the defendant stated that the poll workers could not possibly be expected to know "the intricacies of election law" and that she, herself, was not aware of this law until she received the email.

9. On or about March 26, 2004, I received written notification from the defendant, Elizabeth L. Delaney, of my alleged ineligibility to continue my run for state senate. See Exhibit D.

10. On or about March 27, 2004, local newspapers reported my alleged ineligibility to run for state office as a result of voting in the presidential primary on March 2, 2004. See

Exhibit E.

11. I have researched the relative state statutes, state constitution, U.S. Constitution, the U.S. Code, and related federal and state case law on this issue and bring this action in good faith and with the full expectation of having said state statutes declared unlawful and unconstitutional as they apply to myself, my supporters and to every Massachusetts voter registered as "unenrolled."

12. I futher believe that the emergency amendment in 1993 to Ch. 53, Sec 37 serves no compelling state interest and, in fact, is evidence of invidious discrimination against unenrolled voters in that it purposely, and without legitimate reason, removes the element of *knowledge or notice* to said unenrolled voter that by casting a primary ballot, he/she is actually enrolling in that party and therefore disqualifying said unenrolled voter from a position for said district senate seat on the November ballot.

13. I also believe that the failure of the defendant, William F. Galvin, to give fair warning of this prohibition on voting in the primary, despite his office being named as a defendant on this issue for at least the past twenty years, his failure to notify and/or educate election officials prior to said election of this issue, and then, after said election, issuing an e-mail to all clerks to be on the look out for and disqualify independent candidates who may have voted in said primary constitues negligence and only strengthens my opinion that these individual actions, and the aforestated 1993 amendment to Sec. 37, in their totality, confirm invidious discrimination by a two party legislature against independent or "unenrolled" candidates and their supporters at a time when voter turnout is at its highest level (a

presidential election year).

14. I believe that as a direct and proximate consequence of the aforestated discriminatory, unlawful and unconstitutional state statutes, the defendant, Betty L. Delaney's, refusal to certify my nomination papers, and the attendant publicity associated therewith, I have been significantly disadvantaged as to my ability to both campaign on the issues and raise contributions with any credibility. The republican and democratic candidates for this senate seat, both of whom voted in the March 2, 2004 primary, have not been so burdened.

15. I believe that without the granting of the requested injunctive relief my campaign for state senator of the third Middlesex district will be irreparably harmed and effectively terminated. Myself and those unenrolled voters similarly situated, and/or those who would prefer to support my candidacy and associate with me, will be unfairly prejudiced, denied equal protection under the U.S. constitution and the state constitution and, therefore, will be irreparably harmed.

16. It is my sincere belief that despite Mass. Gen. L. ch. 53, Sec. 37, there is no compelling state interest which requires my making a choice between my constitutional right of voting in the presidential primary and my constitutional right to be an unenrolled candidate for state office in November and, even if there was such a legitimate state interest, there are certainly less burdensome ways to enforce it.

17. With the exception of the registrars' certificate of voter registration required under Sec. 6, I have met all other criteria for having my named placed as an independent candidate for senator in the third Middlesex district in November, 2004; however, without said

registrars' certificate I cannot comply with Mass. Gen. L. ch. 53, Sec. 6 and, therefore, will be denied the right to have my name placed on the November ballot as a candidate state senator for the third Middlesex district without the injunctive relief sought from this Court.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY
THIS TWENTY-SECOND DAY OF APRIL, 2004

Richard P. McClure