## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

RICHARD P. McCLURE and
MARTHA McCLURE,

                     Plaintiffs,

                v.

WILLIAM GALVIN, Secretary of State
for the Commonwealth of Massachusetts;
ELIZABETH L. DELANEY, Town Clerk for the
Town of Chelmsford, Massachusetts; and,
JANE DOE, Chelmsford Election Poll Clerk.

                    Defendants.

CIVIL ACTION
NO. 04-10826-RGS

### DEFENDANT SECRETARY OF THE COMMONWEALTH'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT OF SECTRETARY'S MOTION TO DISMISS

Plaintiff Richard P. McClure seeks declaratory and injunctive relief against the Secretary of the Commonwealth (and the Town Clerk and an unidentified ballot clerk for the Town of Chelmsford) in an effort to have his name placed on the November 2, 2004 ballot as an "unenrolled" or independent candidate for office of State Senator representing the 3rd Middlesex District. Plaintiff Martha McClure is a registered voter in the Town of Chelmsford, who seeks to vote for McClure in the November election.

Pursuant to Massachusetts election laws, McClure is ineligible to have his name placed on the ballot as an unenrolled candidate because, by selecting a Democratic Party ballot in the presidential primary election held on March 2, 2004, McClure became enrolled in the Democratic Party. Massachusetts law disqualifies any person from being certified as an unenrolled candidate if he or she was enrolled in a political party at any time within ninety days preceding the filing deadline for the office he or she seeks. Although McClure – immediately

after voting in the Democratic Party's primary – changed his enrollment status back to unenrolled, he nevertheless is disqualified from being listed as an unenrolled candidate on the November ballot because, by virtue of having voted in the Democratic Party's primary and the statute's plain language, he was enrolled in a political party within ninety days preceding the applicable filing deadline.

Contrary to McClure's argument in support of his motion for a preliminary injunction, there is nothing unconstitutional in the Secretary and other election officials' enforcement of the plain language of the Commonwealth's election laws. (McClure's Mem. at 2-14). The Supreme Court in Storer v. Brown, 415 U.S. 724, 728 (1973), upheld a similar (indeed, a more restrictive) disaffiliation provision under California law that denied ballot position to independent candidates who had voted in the immediately preceding primary elections or had registered party affiliation at any time during the year prior to those elections. Drawing on the Storer decision, the Supreme Judicial Court of Massachusetts in Metros v. Secretary of the Commonwealth, 484 N.E.2d 1015, 396 Mass. 156 (1985), rejected a nearly identical challenge to the constitutionality of the same election laws at issue here. McClure does not and can not meaningfully distinguish his circumstances from the circumstances presented in Storer and Metros, and, therefore, the holdings reached in those cases foreclose McClure's state and federal constitutional claims. Infra at 8-17.

McClure's remaining arguments in support of injunctive relief are premised on his assertions that (1) he did not know or understand the requirements of the challenged election laws and (2) that the defendant election officials allegedly failed to adequately warn him that his participation in the Democratic Party's presidential primary would disqualify him from being listed as an unenrolled candidate on the November ballot. (McClure's Mem. at 14-19). It is well

settled, however, that all citizens are presumptively charged with knowledge of the law and that publication of a statute, without more, is constitutionally sufficient notice of the law's requirements.  <u>Infra</u> at 18.  Furthermore, the Commonwealth cannot be estopped from enforcing the clear and unambiguous provisions of its election laws based on any allegedly negligent acts or omissions of its election officials.  Estoppel, to the extent it applies to a sovereign state at all, requires affirmative misconduct by government officials and justifiable reliance by the private party – neither of which exists here.  <u>Infra</u> at 19.

Accordingly, in the parlance of the governing standard, McClure fails to demonstrate a likelihood of success on the merits and his motion for a preliminary injunction should be denied.[1] In addition, because voter McClure's claims are entirely dependent on the validity of candidate McClure's claims, her request for injunctive relief must likewise be denied.[2]  <u>Infra</u> at 20.

## I.    **STATEMENT OF FACTS**

### A.    **Statutory Framework**

Section 6 of G.L. c. 53 requires that a person running as an "unenrolled" candidate obtain a Voter Registration Certificate.  The statute specifically states that "[t]he name of a candidate for election to any office who is nominated otherwise than by a political party, generally referred to as an "Unenrolled" candidate, shall not be printed on the ballot at a state election . . . unless a certificate from the registrars of voters of the city or town wherein such person is a registered

---

[1]In addition, since the controlling precedent discussed herein establishes that plaintiffs' complaint fails to state a claim upon which relief may be granted, the Secretary's accompanying motion to dismiss should likewise be allowed.  <u>See</u> <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir. 1988) (to survive a motion to dismiss for failure to state a claim, a plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory").

[2]For ease of reference and clarity, the Secretary refers to both plaintiffs as McClure, unless the context otherwise requires.

voter, certifying that he is not enrolled as member of any political party, is filed with the state secretary or city or town clerk on or before the last day provided in section ten for filing nomination papers." Section 6 then goes on to state that "[n]o such certificate shall be issued to any such candidate who shall have been an enrolled member of any political party during the time [1] prior to the last day for filing nomination papers as provided in section ten, and [2] on or after the day by which a primary candidate is required by section forty-eight to establish enrollment in a political party." G.L. c. 53, § 6 (West Supp. 2004) (bracketed numbers and emphasis added). Section 6 thus creates a period during which a candidate who wishes to run as "unenrolled" must not have been enrolled in any political party; clause [1] specifies the end date of that period, by reference to G.L. c. 53, § 10, and clause [2] specifies the beginning date of that period, by reference to G.L. c. 53, § 48. Comparable enrollment requirements are imposed on political party candidates. See G.L. c. 53, § 48 (requiring persons desiring to have their name placed on the ballot as candidate for a political party's nomination to obtain an enrollment certificate, certifying that they have been an enrolled member of the political party whose nomination they seek throughout the ninety days prior to the applicable filing deadline, and further providing that "[n]o such certificate shall be issued to any person who is a candidate for nomination [to the office of state senator] if such person has been an enrolled member of another political party during the year prior to the [filing deadline]").

　　　The current deadline for filing nomination papers with the Secretary for candidates for the office of State Senator is 5:00 p.m. on Tuesday, May 25, 2004. See G.L. c. 53, § 10 (nomination papers for the office of state senator "shall be filed with the state secretary on or before the last Tuesday in May of the year in which a state election is to be held").

　　　Section 48 of G.L. c. 53 requires that a person running as a party candidate obtain an enrollment certificate and further states that no certificate can be issued unless the person has

-4-

been enrolled as a member of the political party whose nomination he seeks throughout the ninety days prior to the last day for filing nomination papers with the Secretary.  G.L. c. 53, § 48. Ninety days prior to May 25, 2004 was February 24, 2004.

Thus, based on G.L. c. 53, §§ 6, 10 and 48, a candidate wishing to be listed on the November ballot as "unenrolled" must not have been enrolled in any political party at any time between February 24, 2004 and May 25, 2004.

Voting in a political party's presidential primary enrolls a voter in that party.  Section 37 of G.L. c. 53 states in relevant part (with emphasis added) as follows:

> . . . If the party enrollment of the voter is not shown on the voting list the ballot clerk shall ask such voter in which political party's primary he desires to vote, and the ballot clerk, upon reply, shall distinctly announce the name of such political party, and shall record the voter's selection upon the voting list.  The ballot clerk shall then give the voter the ballot of the political party so requested.  If the voter was unenrolled prior to the selection of a party ballot he shall continue to be unenrolled, and shall be recorded as unenrolled in the current annual register of voters; provided, however, that in a presidential primary, the voter shall become enrolled in and shall remain a member of the political party whose ballot he received until he files a certificate, signed under the pains and penalties of perjury, with the board of registrars of voters, requesting to have his enrollment changed to another party or political designation or cancelled or by appearing in person before a member of said board and requesting, in writing, that such enrollment be changed or cancelled. . . .

### B.    McClure's Factual Allegations

For some unspecified period prior to February 10, 2004, McClure was enrolled as a member of the Republican Party.[3]  (Compl. ¶ 1).  On February 10, 2004, McClure disenrolled from the Republican Party and registered as an "unenrolled" voter.  (Compl. ¶ 2).

On March 2, 2004, McClure attended the presidential primary at his local precinct. (Compl. ¶ 4).  The ballot clerk asked McClure in which political party's primary he wished to

---

[3]The Secretary's official records establish that McClure was in fact a candidate for the Republican Party nomination for the office of State Representative, Fourteenth Middlesex District, in the 2002 state primary election.  See Exhibit A, hereto.

vote. (McClure Aff. ¶ 5). McClure requested a ballot for the Democratic Party's primary and proceeded to vote in that party's primary election. (Compl. ¶ 4; McClure Aff. ¶ 5).

After witnessing the ballot clerk mark a "D" next to his name on the voting list, McClure informed the clerk that he did not want to enroll in the Democratic Party and that he intended to run as an independent candidate on the November 2004 ballot. (McClure Aff. ¶ 6). The clerk informed McClure that the "D" next to his name on the voting list was for the purpose of recording what ballot he had requested and handed McClure a change of voter registration form or certificate. (McClure Aff. ¶ 6 and Ex. C). McClure completed the voter registration certificate, indicating that he wished to be registered as "U" or unenrolled, and returned the signed certificate to the ballot clerk. Id.

On March 25, 2004, McClure submitted nomination papers to the Town Clerk for certification. (Compl. ¶ 7). By letter dated March 26, 2004, the Town Clerk informed McClure that, pursuant to G.L. c. 53, §§ 6 and 37, she could not issue the required certification because McClure "register[ed] in the Democratic Party on March 2, 2004 by voting in the Democratic Presidential Primary." (Compl. Ex. D).

McClure, who is a licensed and practicing attorney, contends that the ballot clerk did not advise him that by voting in the Democratic Party's primary he would be registered in the Democratic Party and, thus, disqualified from running as an unenrolled candidate in the November 2004 election. (McClure Aff. ¶¶ 1, 6-7). McClure likewise complains that the candidate's guide issued by the Secretary's office also does not explicitly mention this fact. (Compl. ¶ 24 and Ex. F). McClure concedes, however, that G.L. c. 53, § 37 expressly states that "in a presidential primary, the voter shall become enrolled in and shall remain a member of the political party whose ballot he received until he files a certificate . . . requesting to have his enrollment changed to another party or political designation. . . ." (Compl. ¶ 11).

## II.    ARGUMENT

### A.    Preliminary Injunction Standard

McClure, as the party seeking a preliminary injunction, bears the burden of establishing (1) a likelihood of success on the merits; (2) a potential for irreparable injury; (3) that the balance of equities favors him; and (4) that the public interest would not be adversely affected by an injunction.  Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  The "sine qua non" of this familiar four-part test is whether McClure has carried his burden of establishing a likelihood of success on the merits.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).  Since this critical factor is missing here, McClure's motion for a preliminary injunction should be denied.  See id. (if plaintiff fails to demonstrate likelihood of success, court need not address three remaining factors).

### B.    McClure Fails To Establish A Likelihood Of Success

Pursuant to the plain language of G.L. c. 53, § 37, McClure became enrolled in the Democratic Party –  albeit for a short period of time – when he requested a Democratic Party ballot at the March 2, 2004 presidential primary and voted in that party's primary.  Because March 2, 2004 is less than ninety days prior to May 25, 2004, which is "the last day . . . provided for filing nomination papers with the state secretary," G.L. c. 53, § 48, McClure is ineligible to receive a Voter Registration Certificate as an "unenrolled" candidate.  G.L. c. 53, § 6.  Absent a Voter Registration Certificate, McClure is disqualified from having his name placed on the November ballot.  G.L. c. 53, § 6; Johnson v. State Ballot Law Commission, 287 N.E.2d 597, 598, 362 Mass.480, 482-83 (Mass. 1972) (filing of voter registration certificate is mandatory).

McClure does not contend that, under the plain language of the relevant statutory provisions, he is qualified to have his name placed on the ballot as an unenrolled candidate or

that defendants have misapplied the governing law to the facts of his case. Rather, McClure contends that the statutory scheme, as applied to him (and other similarly situated persons), impermissibly burdens the voting and associational rights of independent candidates and their supporters in violation of the State and Federal Constitutions. (McClure's Mem. at 2). He further contends that G.L. c. 53, § 37's enrollment provision constitutes a "surreptitiously contrived waiver of constitutional rights" because it fails to provide unenrolled voters with sufficient advance notice that, by voting in a political party's presidential primary, he or she will become enrolled (at least temporarily) in that political party. (McClure's Mem. at 14-17). Lastly, McClure contends that the defendant election officials "fail[ed] to properly inform [McClure and all unenrolled voters] that voting in the presidential primary in March will eliminate their ability to have their name placed on the November ballot as an unenrolled candidate for state district office." Id. at 17-19. Each contention is addressed in turn.

### 1.    McClure's Constitutionally-Based Challenges Are Foreclosed By Controlling Precedent

In Storer, the Supreme Court upheld a California statute that denied ballot positions to independent candidates who had voted in the immediately preceding party primary elections or had registered as a party member at any time during the year preceding the primary election. Storer, 414 U.S. at 728. Two of the plaintiffs were registered Democrats, one until January and the other until March, 1972. Id. This party affiliation disqualified them from being listed on the ballot as independent candidates for the United States Congress. Id. They challenged the constitutionality of the statute, claiming (like McClure) that it infringed their rights under the First and Fourteenth Amendments to the Constitution. Id. at 727.

The Supreme Court held that it had "no hesitation" in upholding the validity of California's disaffiliation provisions. Id. at 733. In relevant part, the Court found that the

"requirement that the independent candidate not have been affiliated with a political party for a year before the primary [was] expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot."  Id.  In addition, because California law imposed a similar one-year disaffiliation requirement on political party candidates, the statute did not impermissibly discriminate against prospective independent candidates.  Id. at 733-34.  Merely that the statute required candidates desiring "to run for office as an independent [to] anticipate [their] candidacy substantially in advance of [the] election [i.e., a year]," did not impose any unconstitutional burden on the prospective candidates' voting or associational rights.  Id. at 734.  Rather, the Supreme Court found that the prospective candidate was simply required to exercise "foresight" in planning his or her candidacy.  Id.  This requirement, in turn, "protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party and take the alternative route to the ballot" and "works against independent candidates prompted by short-range political goals, pique, or personal quarrel."  Id. at 735.  It also presents a "substantial barrier to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party."  Id.  Given these various considerations, the Supreme Court held:

> It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system.  We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status.

Id. at 736 (emphasis added).  See also Lippitt v. Cipollone, 404 U.S. 1032, 1032 (1972) (affirming, without opinion, district court decision upholding statute banning party-primary candidacies of those who had voted in another party's primary within last four years); Thournir

v. Meyer, 909 F.2d 408, 410 (10th Cir. 1990) (upholding constitutionality of Colorado's one-year independent candidate disaffiliation provision).

Relying largely on the Supreme Court's decision in Storer, the Supreme Judicial Court of Massachusetts ("SJC") previously rejected a similar challenge to the constitutionality of G.L. c. 53, §§ 6 and 37 brought by an individual, Metros, who wished to be listed on the November 1984 ballot as an independent candidate for State Senator and one of her supporters. Metros, 484 N.E.2d at 1017, 396 Mass. at 158. Like McClure, Metros was an unenrolled registered voter who chose to vote in the March 13, 1984 Democratic Party presidential primary election. Id. The next day, Metros (again, like McClure) changed her enrollment from Democrat to unenrolled. Id. Seventy-seven days after the primary, Metros filed nomination papers as an independent candidate for the office of State Senator. Id. In addition, like McClure (at least according to his complaint), Metros "met all the qualifications to have her name printed on the ballot, except for the requirement that she obtain from the [city] registrars of voters a certificate that she was not enrolled as a member of any political party during the preceding ninety days." Id. The registrars (like the election officials here) determined that they were "prohibited by statute from issuing the certificate because of Metros's enrollment in the Democratic party" on the day she voted in that party's presidential primary. Id. at 1018, 158. Metros filed suit.

Like McClure, Metros claimed that the election officials' enforcement of the Commonwealth's disaffiliation provisions violated her federal and state constitutional rights of association and equal protection. Id. at 1020-21, 163. The SJC held that McClure's federal constitutional claims were fully disposed of by the Supreme Court's decision in Storer, and that

no different conclusion was required under the State Constitution.[4]  Id. at 1020-21, 163.  In addition, like McClure, Metros contended that the Commonwealth's closed primary system[5] impermissibly infringed on her right to vote in presidential primary elections because it forced her to declare an affiliation with a political party and thereby relinquish – albeit temporarily – her status as an unenrolled voter.  See id. at 1021, 164; McClure's Mem. at 2-3.  The SJC rejected this claim, holding that neither the State or Federal Constitution prohibits a state from restricting access to primary election ballots to members of the political party whose candidates are seeking the nomination.  Metros, 484 N.E.2d at 1020-21, 396 Mass. at 164-65 (citing Rodriguez v. Popular Democratic Party, 457 U.S. 1, 14 (1982)).  Indeed, the Supreme Court recently reaffirmed that political parties have a First Amendment associational right to restrict participation in their primaries to persons who bear some real and substantial allegiance to their party.  California Democratic Party v. Jones, 530 U.S. 567, 575 (2000) ("In no area is the political association's right to exclude more important than in the process of selecting its nominee."); see also Tashjian v. Republican Party of Conn., 479 U.S. 208, 215-16, n.6 (1986) (a "nonmember's desire to participate in [a political] party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications").

---

[4]Although G.L. c. 53, § 37 has been amended since the Metros case was decided, see St. 1993, c. 475, § 26 (an emergency act making various minor language changes and adding the fifth sentence to the statute), none of those changes warrant a departure from the SJC's holding in Metros.  Under the versions of the statute in effect then and now, an unenrolled person, like McClure or Metros, who votes in a political party's presidential primary becomes enrolled in the party for which he or she has requested a ballot.

[5]A "closed" primary limits voting in a party's primary to members of that political party. An "open" primary permits non-party members to take another political party's primary ballot. Massachusetts conducts closed primaries although, as discussed below, its election laws permit on-the-spot enrollment and unenrollment at primary elections.  Metros, 484 N.E.2d at 1021, 396 Mass. at 164 n. 9 (internal citation omitted).  See infra at 14-17.

In <u>Jones</u>, the Supreme Court struck down California's so-called "blanket" primary system that allowed "all persons entitled to vote, including those not affiliated with any political party, . . . the right to vote for any candidate regardless of the candidate's political affiliation." <u>Jones</u>, 530 U.S. at 570.  In so doing, the Supreme Court distinguished a closed primary system, like that at issue here, by observing that "[u]nder that system, <u>even when it is made quite easy for a voter to change his party affiliation on the day of the primary</u>, and thus, in some sense, to 'cross over,' <u>at least he must formally become a member of the party; and once he does so, he is limited to voting for candidates of that party</u>."  <u>Id.</u> at 577 (emphasis added).  From this reasoning, it follows that a voter may be constitutionally required to choose, as G.L. c. 53, § 37 requires, between participating in a political party's closed presidential primary election and preserving his or her continuous status as an unenrolled voter.  <u>Metros</u>, 484 N.E.2d 1021, 396 Mass. at 164.  As the SJC in <u>Metros</u> stated in words equally applicable to McClure:  "[McClure] chose to join the Democratic party.  A benefit of that choice was [his] opportunity to participate in the nominating process of the party.  A burden of that choice was [his] disqualification from seeking office as a candidate unaffiliated with that party."  <u>Id.</u>  McClure simply cannot have the "benefits of being an independent and a Democrat at the same time."  <u>Id.</u>

McClure seeks to distinguish <u>Storer</u> and <u>Metros</u> on two substantive grounds.  First, he contends that the Commonwealth's statutory scheme impermissibly discriminates against unenrolled voters by making it more difficult for them to have their names placed on the November ballot than other voters.  (McClure Mem. at 9).  Second, he contends that the Commonwealth lacks any "compelling" justification for requiring unenrolled voters to enroll in the political party whose primary ballot they seek because such enrollment is required only for a "matter of minutes" and the statute, as amended effective January 14, 1994, imposes this

-12-

requirement only in connection with presidential primary elections, and not any other elections.[6]
Id. 10-13.

### a.    The Statutory Scheme Does Not Discriminate Against Unenrolled Candidates

Contrary to McClure's argument, requiring prospective unenrolled candidates to remain unaffiliated with any political party for 90 days prior to the applicable filing deadline imposes no greater restriction on unenrolled candidates than the restrictions imposed on political party candidates.  Opinion of the Justices, 333 N.E.2d, 380, 382, 368 Mass. 819, 823 (Mass. 1975) (holding, in response to a question from the House of Representatives, that "the restrictions on independents contained in [the proposed version of G.L. c. 53, § 6] are no greater than those imposed on members of political parties").  G.L. c. 53, § 48 requires persons seeking to run in a political party's primary to obtain a certificate from the local registrar, "certifying that he [or she] has been enrolled as a member of the political party whose nomination he seeks throughout the ninety days prior to the last day . . . for filing nomination papers with the state secretary."[7] This requirement precisely mirrors the burden imposed on unenrolled candidates under G.L. c. 53, § 6.  Indeed, even McClure concedes that it is "impossible for any candidate to attempt to switch parties after the start of the 90-day window and again access to the November ballot as another party's candidate."  (McClure's Mem. at 12).

---

[6]McClure also contends that the SJC in Metros failed to recognize that Storer involved an election to a federal office, not an election to a "state district office."  (McClure's Mem. at 8-9).  More likely, however, is that the SJC, given its close reading of the Storer decision, recognized this "distinction" but found it to be immaterial.  McClure fails to demonstrate otherwise.

[7]In addition, G.L. c. 53, § 48 provides that no certificate for a political party primary "shall be issued to any person who is a candidate for nomination [for State Senate], if such person has been an enrolled member of another political party during the year prior" to the filing deadline.  This one-year limitation on cross-party registration is, of course, a more onerous restriction on political party candidates than the 90-day restriction applicable to unenrolled candidates.

Thus, as in <u>Storer</u> and <u>Metros</u>, application of the 90-day disaffiliation provision does not unconstitutionally discriminate against prospective unenrolled candidates like McClure.  <u>See</u> <u>Storer</u>, 415 U.S. at 733-34.  Rather, as the Supreme Court held in <u>Storer</u>, the disaffiliation provisions contained in G.L. c. 53, § 6 and § 48 merely ensure that all prospective candidates exercise "foresight" in anticipating their election campaigns.  <u>Id.</u> at 734.  While such provisions may "reduce the universe of potential candidates who may appear on the ballot" by ruling out "independent" candidacies by individuals who have declared an affiliation with an another political party or designation within 90 days preceding the filing deadline, the Supreme Court has repeatedly recognized that such restrictions are in keeping with a State's legitimate "interest in protecting the integrity, fairness, and efficiency of [its] ballots and election process as a means for electing public officials."  <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 363-64 (1997); <u>Storer</u>, 415 U.S. at 733-36.

           *b.*      *The Commonwealth's Interest In Preserving Party Allegiance*

McClure also contends that the concerns about preserving political party allegiance identified by the Courts in <u>Storer</u> and <u>Metros</u> as legitimate state interests are not at issue here because, effective January 14, 1994, the Commonwealth amended G.L. c. 53, § 37 to permit unenrolled voters to vote in all primary elections – except presidential primaries – without having to enroll in the political party whose ballot they requested.[8]  <u>See</u> G.L. c. 53, § 37 (as amended by St. 1993, c. 475, § 26) ("If the voter was unenrolled prior to the selection of a party ballot he shall continue to be unenrolled and shall be recorded as unenrolled in the current

---

[8]Prior to 1994, an unenrolled voter who wished to vote in <u>any</u> primary election had to enroll with the political party whose ballot he or she chose.  G.L. c. 53, § 37 (pre-1994 amendment, emphasis added) ("If the party enrolment [sic] of the voter is not shown on the voting list he shall be asked by the ballot clerk with which political party he desires to be enrolled, and . . . [t]he ballot clerk shall . . . give the voter one ballot of the political party <u>in which he is thus enrolled</u>.").  Contrary to McClure's allegation, <u>see</u> McClure's Mem. at 17, the 1994 amendment of Section 37 did not eliminate any knowledge or notice requirement.

annual register of voters; provided, however, that in a presidential primary, the voter shall

become enrolled in and shall remain a member of the political party whose ballot he received

until he files a certificate, signed under the pains and penalties of perjury, . . .  requesting to

have his enrollment changed to another party or political designation. . . .").  Moreover, with

regard to presidential primary elections, the current (and former) version of G.L. c. 53, § 37

requires unenrolled voters seeking to vote in a political party's presidential primary to enroll in

the party whose ballot they request only for a "matter of minutes."  (McClure's Mem. at 10).  In

light of these considerations, McClure contends that there is no "compelling" justification for

what he describes as G.L. c. 53, § 37's "automatic" enrollment provision, and that the

Commonwealth's election laws are not "narrowly tailored" to meet any legitimate state interest.[9]

(McClure's Mem. at 13).

Contrary to McClure's assumption, the Commonwealth need not demonstrate a

"compelling" justification for G.L. c. 53, § 37's enrollment provision or its effect on McClure's

subsequent ability to qualify under G.L. c. 53, § 6 as an unenrolled candidate on the November

ballot.  Rather, the Supreme Court has developed a sliding scale approach to resolving

constitutional challenges to a State's election laws, depending on the "character and magnitude"

of the interests at stake.  Timmons, 520 U.S. at 358.  Only state laws that impose "severe

burdens on plaintiffs' rights must be narrowly tailored and advance a compelling interest."  Id.

"Lesser burdens . . . trigger less exacting review, and a State's 'important regulatory interests'

---

[9]Contrary to McClure's characterization, Section 37's enrollment provision is not
"automatic."  (McClure's Mem. at 13).  Rather, as the statute and facts here demonstrate, the
unenrolled voter first must affirmatively request a particular political party's ballot and, thereby,
be enrolled in the party whose ballot he seeks before proceeding to vote in the presidential
primary election.  G.L. c. 53, § 37; McClure Aff. ¶ 5 ("I asked for a democratic ballot.").
Moreover, if the voter, after having participated in the presidential primary of his or her choice,
desires to change that affiliation, the voter must again take affirmative action to do so, as
McClure did here.  G.L. c. 53, § 37; Compl. at Ex. C.

will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'"  Id. (quoting

Burdick v. Takushi, 504 U.S. 428, 434 (1992)).  Nor must the Commonwealth submit

"elaborate, empirical verification of the weightiness of [its] asserted justifications."  Id. at 364-

65.

     Here, as both Storer and Metros establish, the burden imposed on unenrolled voters,

including those voters like McClure who seek to be listed on the November ballot as an

unenrolled candidate, is not high.  All the voter need do is refrain from voting in a political

party's presidential primary election if that primary occurs within 90 days prior to the

nomination filing deadline.[10]  See Storer, 414 U.S. at 728; Metros, 484 N.E.2d 1021, 396 Mass.

at 164.  Given that the burden imposed on unenrolled voters, like McClure, is not high, the

Commonwealth need not show (as McClure mistakenly contends) that its statutory scheme is

"narrowly tailored to serve compelling state interests."  See Timmons, 520 at 364-65; McClure

Mem. at 13.  Instead, the Commonwealth's "asserted regulatory interests need only be

'sufficiently weighty to justify'" the restriction imposed on prospective unenrolled candidates.

Id. (citation omitted).

     All of the "sufficiently weighty" interests identified by the courts in Storer and Metros

continue to be applicable here.  See infra at 9-12.  Merely that Massachusetts, through its 1994

amendment of G.L. c. 53, § 37, attempted to balance its interest in preserving the "traditional

two party system" with its interest in promoting increased voter access to party primary ballots

(to the extent permitted by the parties themselves) does not warrant a different conclusion.  See

Timmons, 520 U.S. at 367.  Consistent with Article Two, Section 4(e) of *The Charter & The*

---

    [10]In addition, like the California election laws at issue in Storer, see Storer, 415 U.S. at
736 n.7, Massachusetts law permits a candidate who cannot qualify for the ballot (and their
supporters) as an independent candidate to pursue an alternative "write in" campaign.  G.L. c. 53,
§ 34; G.L. c. 54, § 42; Metros, 484 N.E.2d at 1019, 396 Mass. at 161.  This too indicates that the
burden imposed here is not so high as to warrant a strict scrutiny.

*Bylaws Of The Democratic Party Of The United States*, which precludes the use of open primary ballots in national delegate elections, see **www.democrats.org/pdfs/charter.pdf** (relevant excerpt attached as Exhibit B hereto), Section 37 respects the right of political parties to demand some measure of party allegiance in presidential primary elections. See Jones, 530 U.S. at 577, 583. At the same time, Section 37 makes it "quite easy" for unenrolled voters seeking to vote in a presidential primary election to enroll in the political party whose ballot they seek and, after voting, to return to their previously unenrolled status. See id. at 577 and n.8 (even where state makes it "quite easy for voter to change his party affiliation on the day of the primary," preservation of two party system is nevertheless served since voter must "formally become a member of the party; and once he does so, he is limited to voting for the candidates of that party"). In addition, by eliminating the need for formal party enrollment in non-presidential primary elections, Section 37 promotes broader voter participation in such elections by removing some of the obstacles posed by the traditional closed primary system.[11] See id. at 584-85 (recognizing state's legitimate interest in promoting increased voter participation, but finding it unavailing under the circumstances of that case). It is ironic indeed that McClure apparently objects to an amendment that made it easier for unenrolled voters, like himself, to participate in primary elections. Nothing in the State or Federal Constitution requires the Commonwealth to compromise the "policy choices embodied in its ballot-access [and voter-access] requirements to accommodate" McClure's desire to simultaneously vote in the Democratic Party's closed presidential primary election and preserve his professed status as an "unenrolled" candidate. See Timmons, 520 U.S. at 365. Such attempts at "ballot

---

[11]Significantly, the Secretary notes that no political party has objected to the elimination of the party enrollment requirement for non-presidential primary elections and McClure – as a prospective unenrolled candidate – lacks standing to maintain such a claim.

manipulation[]" and "short-range political" maneuvering likely would result in "voter confusion" and, thereby, undermine the stability of the Commonwealth's political system. See id. As such, they are properly precluded by state law. Id.

      **2.    McClure Cannot Claim Ignorance Of The Law**

McClure next contends that relief is warranted because he voted in the March presidential primary without knowing or understanding that by doing so he was effectively disqualifying himself from being listed on the November ballot as an unenrolled candidate. (McClure Mem. at 14). To prevail on this claim, however, McClure would have to profess ignorance of the plain language of G.L. c. 53, § 6 and § 37. This he cannot do.

"All citizens are presumptively charged with knowledge of the law," Atkins v. Parker, 472 U.S. 115, 130 (1985), and "no notice of the impact of legislation on a person's rights is constitutionally required beyond the constructive notice that enactment of the legislation itself provides."[12] DiBiase v. Commissioner of Ins., 704 N.E.2d 1188, 1189-90, 428 Mass. 755, 758-58 (Mass. 1999); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) ("the legislative determination provides all the process that is due"). Indeed, the "entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." Atkins, 472 U.S. at 131. Application of that presumption here is particularly appropriate since McClure is a licensed and practicing attorney, and also has been previously a candidate for public office. (McClure Aff. ¶

---

[12]Merely that the 1994 amendment to G.L. c. 53, § 37 was an "emergency" enactment, meaning that it took effect immediately as opposed to 90 days later, see Article 48, Amend. to Mass. Constitution, The Referendum, I, does not warrant a different conclusion. See McClure's Mem. at 18. The statute was amended over a decade before McClure voted in the March 2004 presidential primary. It cannot reasonably be contended that this period did not provide McClure with "an adequate opportunity to become familiar" with the law's requirements. See Atkins, 472 U.S. at 130.

1; Exhibit A hereto).  See also Thournir v. Meyer, 708 F. Supp. 1183, 1187 (D. Colo. 1989)

(denying prospective candidate's motion for summary judgment where "[i]t appear[ed] that the

plaintiff's ineligibility [for an independent ballot slot] resulted, at least in part, from her own

failure to become familiar with Colorado's election laws"), aff'd, 909 F.2d 408 (10th Cir. 1990).

### 3.    The Commonwealth Is Not Subject To Estoppel

Furthermore, to the extent McClure seeks to avoid the requirements of the

Commonwealth's election laws based on allegedly negligent or incomplete statements attributed

to the defendant election officials, his claims are barred because estoppel (to the extent it is

recognized at all) does not lie against the government except possibly in "only the most extreme

circumstances." Dantran, Inc. v. United States Dep't of Labor, 171 F.3d 58, 66 (1st Cir. 1999);

see also Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000) (". . . estoppel against the government if it

exists at all is hen's-teeth rare").  "It is firmly settled that a party seeking to raise estoppel

against [a] sovereign must, at the very least, demonstrate that government agents have been

guilty of affirmative misconduct." Dantran, Inc. 171 F.3d at 67 (collecting cases).  Negligence

of the sort alleged here is wholly insufficient.  Id.

"In a related vein, if a statute . . . clearly limns a party's legal obligations, the party

cannot justifiably rely for estoppel purposes on a government agent's representation that the law

provides to the contrary." Id. (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384

(1947); Irving v. United States, 162 F.3d 154, 166 (1st Cir. 1998) (en banc)).  McClure,

therefore, could not have justifiably relied on any contrary or incomplete representations

allegedly made by the defendant election officials with respect to the impact that his

participation in the Democratic Party's presidential primary would have on his subsequent

ability to be listed as an unenrolled candidate on the November ballot because any such reliance

was (as already demonstrated) contrary to the plain language of G.L. c. 53, §§ 6 and 37.

### C.  Voter McClure Fails To Establish A Likelihood Of Success

Voter McClure asserts that her right to associate with (by voting for) the candidate of

her choice has been denied because McClure is ineligible for the November ballot.  See

McClure Mem. at 4.  There is, however, no constitutional right to vote for a candidate that is

ineligible for office or otherwise disqualified from the ballot.  See Timmons, 520 U.S. at 359

(although a political party has a right to select its own candidate, "[i]t does not follow . . . that a

party is absolutely entitled to have its nominee appear on the ballot as that party's candidate"

where, for instance, the candidate is "ineligible for office, unwilling to serve, or, [otherwise

disqualified]); Burdick v. Takushi, 504 U.S. 428, 440 (1992) ("It seems to us that limiting the

choice of candidates to those who have complied with state election law requirements is the

prototypical example of a regulation that, while it affects the right to vote, is eminently

reasonable.").  See also Metros, 484 N.E.2d at 1019; 396 Mass. at 161 (rejecting similar claim);

League of Women Voters v. Diamond, 965 F. Supp. 93, 103 n.5 (D. Me. 1997) ("neither the

right to run for elective office nor the right to vote for a particular candidate exists under law"),

aff'd, 82 F.3d 546 (1st Cir. 1998).  Furthermore, as the Supreme Court has noted, "[a]lthough a

disaffiliation provision [like the one at issue here] may preclude . . . voters from supporting a

particular ineligible candidate, they remain free to support and promote other candidates who

satisfy the state's disaffiliation requirements." Anderson v. Celebrezze, 460 U.S. 780, 792 n.12

(1983).  Alternatively, voter McClure may "write in the name of the candidate of her choice if

that person has not qualified for the ballot." Metros, 484 N.E.2d at 1019; 396 Mass. at 161

(citing G.L. c. 54, § 42); G.L. c. 54, § 34 (requiring write-in spaces on ballots in state primary

elections).  Voter McClure, therefore, likewise fails to demonstrate a likelihood of success.

### III.    CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for a preliminary injunction should be

denied.

Respectfully submitted,

WILLIAM FRANCIS GALVIN,
SECRETARY OF THE COMMONWEALTH,

By his counsel,

THOMAS F. REILLY
ATTORNEY GENERAL

_____

James J. Arguin (BBO No. 557350)
Assistant Attorney General
One Ashburton Place, Room 2019
Government Bureau
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2074

Dated:   May 10, 2004