UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-10826-RGS

RICHARD P. McCLURE and
MARTHA McCLURE

v.

WILLIAM GALVIN, Secretary of State
for the Commonwealth of Massachusetts;
ELIZABETH L. DELANEY, Town Clerk for the
Town of Chelmsford, Massachusetts; and,
JANE DOE, Chelmsford Election Poll Clerk

MEMORANDUM AND ORDER
ON PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION

May 17, 2004

STEARNS, D.J.

This case pits the right of citizen access to the ballot against the interests of the State in regulating elections, and indirectly, against the associational rights of the enrolled members of a political party. The essential facts are as follows. Under Massachusetts law, an independent (unenrolled) voter seeking election to state office must meet certain requirements in order to file as a candidate. Among them is the obtaining of a voter registration certificate from the Clerk in the City or Town where the prospective candidate resides. G.L. c. 53, § 6. To be certified, the candidate must not have been enrolled as a member of any political party during the ninety days prior to the deadline for filing his or her candidacy with the Secretary of State.[1] G.L. c. 53, §§ 6, 10, and 48. Of immediate

---

[1] A candidate seeking a party nomination must establish that he or she was an enrolled member of that party during the ninety days preceding the filing deadline and that he or she was not enrolled in any other party during the prior year.

relevance to this case is G.L. c. 53, § 37, which provides that a person who votes in a party presidential primary thereby becomes enrolled as a member of that party, although he or she may immediately disenroll by filing a certificate changing or cancelling the party affiliation.

Plaintiff Richard McClure, a practicing attorney who has previously run as a candidate for state office, disenrolled from the Republican Party on February 10, 2004, and changed his status to unenrolled. On March 2, 2004, McClure voted in the Democratic Party presidential primary. After casting his ballot, McClure immediately reregistered as an independent. On March 25, 2004, McClure applied to the Chelmsford Town Clerk for a voter registration certificate in order to run as an independent candidate for the Massachusetts State Senate. On March 26, 2004, the Town Clerk refused to issue a certificate because McClure, by voting in the Democratic presidential primary, was, however briefly, an enrolled a member of the Democratic Party during the ninety days preceding the May 25, 2004 filing deadline.

McClure then filed this lawsuit seeking, among other relief, an injunction ordering the Town Clerk to certify his unenrolled status and further ordering the Secretary of State to accept his nomination papers and place his name on the November 2, 2004 ballot. McClure alleges that G.L. c. 53, § 37, violates his First Amendment rights as well as those of his co-plaintiff wife and others who wish to support his candidacy. On April 28, 2004, the court granted plaintiffs' motion for a short order of notice and ordered the Commonwealth to file an expedited reply to the motion for a preliminary injunction. A hearing on the motion was held on May 11, 2004.

The award of a preliminary injunction requires consideration of (1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm, (3) the balancing of the relevant equities, and (4) the effect on the public interest. <u>Campbell Soup Co. v. Giles</u>, 47 F.3d 467, 470 (1st Cir. 1995). "Likelihood of success is the main bearing wall of the four-factor framework." <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 16 (1st Cir. 1996). Because in this case, there is no likelihood of plaintiffs' success on the merits, there is no reason to weigh the three additional considerations that factor in the award of a preliminary injunction. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993).

In <u>Storer v. Brown</u>, 415 U.S. 724 (1974), the Supreme Court considered a more restrictive California statute that barred any candidate from running as an independent who had cast a party vote in the most recent primary or who had been enrolled in a political party at any time during the twelve months prior to the next primary. The Court upheld the statute against a challenge brought by two disqualified former members of the Democratic Party who had sought to run as independent candidates for Congress. The plaintiffs in <u>Storer</u> maintained, as does McClure in this case, that the disqualification infringed their First Amendment and Fourteenth Amendment rights. Citing principally to <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973), where the Court had held that a statute restricting the right to vote in a party primary to enrolled members served the legitimate State interest in preventing interparty raiding, the <u>Storer</u> Court held that the California statute served a similar legitimate interest in preserving the stability of the political system.

> It protects the direct primary process by refusing to recognize independent candidates who do not make early plans to leave a party. It works against independent prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party to a party fielding an 'independent' candidate to capture and bleed off votes in the general election that might well go to another party.
>
> . . .
>
> It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status. Nor do we have reason for concluding that the device California chose, [Cal. Elec. Code] § 6830(d) (Supp. 1974), was not an essential part of its overall mechanism to achieve its acceptable goals. As we indicated in Rosario, the Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot.

Storer, 415 U.S. at 735-736.

It was to Storer that the Supreme Judicial Court turned in Metros v. Secretary of the Commonwealth, 396 Mass. 156 (1985), where identical arguments were made in a challenge to the same statutes that are at issue here. The plaintiffs in Metros argued that G.L. c. 53, §§ 6, 37, and 48, violated the plaintiff voter's right of free association by denying her the opportunity to vote for the candidate of her choice, while infringing the plaintiff candidate's rights to free association and equal protection by penalizing her for having exercised the right to vote in her primary of choice.

>These arguments the Supreme Judicial Court held, had been foreclosed by <u>Storer</u>.
>
>>The plaintiffs would distinguish <u>Storer</u> from their case, finding differences in the interests asserted by the challengers of the California law.  In particular, the plaintiffs assert that the State's interests were weighed against the independent candidates' rights to seek elective office in <u>Storer</u>, not with their right to vote, of which Metros claims she was deprived.
>>
>>Metros fails to convince us of the distinction.  She was not deprived of her opportunity to vote in the Democratic party primary election, and in fact voted as a Democrat in that election.  She was denied a place on the ballot as an unaffiliated candidate because she had been affiliated with a party within the prohibited time period clearly set forth in the statute.  Two of the plaintiffs in <u>Storer</u> had been registered Democrats who were statutorily disqualified from ballot status as independent candidates because of their party affiliation within the time period set forth in the California statute.  There is no significant distinction.  Metros's claim of infringement of her rights of association and equal protection have been disposed of by the opinion of the United States Supreme Court in Storer to the extent that her arguments are based on the Federal Constitution.  While we have left open the question whether arts. 1, 9, and 16 of the Massachusetts Declaration of Rights may provide a different standard than the First and Fourteenth Amendments to the Federal Constitution, <u>Bachrach v. Secretary of the Commonwealth</u>, 382 Mass. 268, 273-274 n.12 (1981), the plaintiffs advance "no separate reasons, and we are unaware of any, to conclude that the Massachusetts Constitution affords them protection not provided by the First and Fourteenth Amendments of the United States Constitution."  <u>Langone v. Secretary of the Commonwealth</u>, [388 Mass. 185, 199 (1983)].

<u>Metros</u>, 396 Mass. at 163.

McClure attempts to distinguish <u>Metros</u> by pointing to a 1994 amendment to G.L. c. 53, § 37, the effect of which is to now permit unenrolled voters to vote in all primary elections except presidential primaries without becoming enrolled in the political party as a result. The distinction is without a meaningful difference.  It is impossible to see how a statute that

places an even lesser burden on an independent voter who desires to seek public office could be more violative of a voter's rights. Nor is the State's interest any less legitimate in seeking in some small way to preserve the partisan integrity of the parties' nominating processes, even if only in selecting a candidate for President.[2]

McClure's remaining arguments do not require any extended discussion. That he was unaware of the disqualification provision is of no moment. The adage that "[a]ll citizens are presumptively charged with knowledge of the law," Atkins v. Parker, 472 U.S. 115, 130 (1985), has all the more force with respect to a practicing attorney who has previously run for public office. Neither is there any significance in the burden placed on a candidate to sound out the rules well in advance of his or her campaign. As the Supreme Court observed in Storer, "[i]t is true that a California candidate who desires to run for office as an independent must anticipate his candidacy substantially in advance of his election campaign, but the required foresight is little more than the possible 11 months examined in Rosario, and its direct impact is on the candidate, and not voters." Storer, 415 U.S. at 734. Finally, that an unidentified ballot clerk failed to inform McClure of the consequences that casting a party ballot might have on his candidacy for public office, even assuming that the clerk was aware of his plans, provides no basis for an estoppel. See Kelley v. National

---

[2]In this regard, the State is undoubtedly acting to accommodate the wishes of the parties themselves. While the Constitution does not provide for political parties – indeed the historical evidence is that the Framers, with the outspoken exception of Madison, thought that they had succeeded in devising a plan for presidential elections free of "the great evil of cabal" – there is no doubt that political parties have certain "inherent rights" that are constitutionally protected, among them the right to determine their own membership. See Joseph Starr, Legal Status of American Political Parties, 6/1/40 Am. Pol. Sci. Rev. 428.

6

Labor Relations Board, 79 F.3d 1238, 1249 (1st Cir. 1996); United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir. 1985).

## ORDER

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is DENIED. Because the Complaint in its entirety fails to state a claim upon which relief can be granted, the Secretary of State's motion to dismiss is ALLOWED.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE