04-10826 RGS

No. 04-

IN THE

**Supreme Court of the United States**

**OCTOBER TERM, 2004**

mem.

RICHARD P. McCLURE,
*Petitioner*

*v.*

WILLIAM F. GALVIN, Secretary of State for the Commonwealth of Massachusetts;
ELIZABETH DELANEY, Town Clerk, Town of Chelmsford;
JANE DOE, Chelmsford Election Poll Clerk
*Respondent.*

**PETITIONER'S APPLICATION FOR STAY
AND WRIT FOR INJUNCTIVE RELIEF PENDING APPEAL**

Richard P. McClure, Esquire
8 Westford Street
Chelmsford, MA 01824
(978) 256-8822
MA BBO# 564713

To the Honorable David Souter, Associate Justice of the United States Supreme Court:

Now comes the petitioner, Richard P. McClure, and pursuant to 28 U.S.C. Sec.'s 1651, 2101, 2106, and Supreme Court Rules 20, 21, 22 and 23, hereby applies for a stay of the judgment entered by the United States Court of Appeals in the above captioned matter (decision attached hereto at Appendix) and further applies for injunctive relief to Ordering the respondent, William F. Galvin; Secretary of the State, Commonwealth of Massachusetts, to place petitioner's name on the November 2 ballot as a candidate for state senate; third Middlesex district.

In support of said application, petitioner states that Mass. Gen. L. c.53, Sec.'s 6 and 37 are unduly burdensome and discriminatory, serve no legitimate or compelling state interest and violate the petitioner's First and Fourteenth Amendment rights to vote, to have equal ballot access and to associate politically with others and, therefore, are violations of his civil rights under 42 U.S.C. Sec. 1983, and are entitled to review by a federal court. Petitioner sets forth further justifications below.

Petitioner respectfully requests that any requirement for bond be waived.

## QUESTION PRESENTED

Whether the disaffiliation provisions of Mass. Gen. L. c.53, Sec.'s 6 and 37, in that they only apply to unenrolled voters who cast a ballot in the Massachusetts presidential primary election,

1.  serve any compelling, important or reasonable state interest;

2.  are unreasonably burdensome and discriminatory and create an unconstitutional "chilling effect" on unenrolled voters' constitutional rights when less burdensome and less discriminatory means are easily available; and

3.  Whether the facts and issues in this matter warrant the Court's issuance of a Preliminary Injunction Ordering the defendant, Secretary of State, to place the name of the  plaintiff, Richard P. McClure, on the November 2, 2004 general election ballot  as a candidate for state senator; third Middlesex district.

## A. PROCEDURAL HISTORY AND STATEMENT OF FACTS

In the interests of brevity, petitioner accepts and acknowledges as accurate the facts and procedural history as set forth by the United States Court of Appeals; First

Circuit (Lynch, J.), in parts I and II of its decision, with the following exceptions and distinctions:

1. The Massachusetts presidential primary has been held within the ninety day disaffiliation period, in every contest, since 1976 and is not, as the appellate court characterizes, a unique event in 2004.[1]

2. Petitioner objects to the lower court's contention that petitioner's claims of improper notice and estoppel are waived and asserts that said claims are encompassed in the underlying constitutional claims.

3. In noting the statutory changes at issue, the lower court completely ignores the 1993 statutory changes (effective January, 1994) in the language of Mass. Gen. L. c.53, Sec. 37 which petitioner asserts are at the crux of the underlying issues regarding enrollment, affiliation, discrimination and notice and were set out in petitioner's original complaint and memorandum and referred to by the defendant in its brief at Appendix, page 21).

In 1993, the state legislature amended said M.G. L. ch. 53, sec. 37 as follows:

Historical and Statutory Notes

**1993 Legislation**

---

[1] The Massachusetts Supreme Judicial Court in *Re Opinion of the Justices,* citing *Storer*, opined that the new, 28 day disaffiliation would not intrude on constitutional rights; however at that time, 28 days would not encompass the presidential primary election and there is no evidence that the Court considered that factor.

St. 1993, c. 475, Sec. 26, an emergency act, approved Jan. 14, 1994, in the first paragraph, in the third sentence, substituted "enrollment" for "enrolment" and "the ballot clerk shall ask such voter in which political party's primary he desires to vote" for "he shall ask be asked by the ballot clerk with which political party he desires to be enrolled", in the fourth sentence, substituted "the ballot of the political party so requested" for one ballot of the political party in which he is thus enrolled", and added the fifth sentence.

Mass. Gen. L. ch. 53, Sec.37, as amended, requires an unenrolled voter wishing to vote in a party's presidential primary to answer the question *"...in which political party's primary he desires to vote," the answer to which, by statute, **automatically and without notice** enrolls him/her in that party.* The net result of said 1993 amendment being *the elimination of the verbal notice by the clerk to the voter of "party enrollment." Prior to this 1993 amendment, the clerk would ask the unenrolled voter, **"in which party would you like to be enrolled?"***

4.  Defendants' claims of laches, administrative inconvenience and petitioner's failure to seek timely relief as being valid reasons to deny the request for injunction are never addressed by the appellate court. In the event this Court wishes to give consideration to same in *its* decision on whether injunctive relief should issue, petitioner addresses the relative procedural facts infra.

5.  Petitioner files this action pro se and, until granted admission to this Court, addresses only the constitutional claims as to himself.

## B. STANDARDS FOR GRANTING A STAY:

Under well-established precedents of this Court, a stay or injunction pending review on appeal will be granted where the Circuit Justice determines (1) it is reasonably likely that four Justices will vote to note probable jurisdiction and grant the petition for certiorari; (2) where there is a fair prospect that the decision being reviewed will be reversed; (3) where denial of the stay will cause the applicants irreparable injury; and (4) whether there are any other countervailing equities that might outweigh the applicants' interest in obtaining a stay. California v. American Stores, Co., 492 U.S. 1301 (1989).

In the present case, the petitioner's application overwhelmingly satisfies each of these factors and the granting of a stay and the requested injunctive relief is of paramount importance in protecting the petitioner's, and the state's two million unenrolled voters, constitutional rights

## C. APPLICATION OF THE STAY STANDARDS TO THIS CASE

### I.    Probability Of Certiorari Being Granted

The United States Supreme Court has consistently held that a citizen's right to vote is protected under the First and Fourteenth Amendments to the United States Constitution

from either federal or state action. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "The right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561-562 (1964). The political franchise of voting is a fundamental political right, because preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "[W]e must reject the notion that Art. II, Sec. 1 gives the states power to impose burdens on the right to vote, where such burdens are expressly prohibited in other constitutional provisions." *Williams v. Rhodes*, 393 U.S. 23, 29.

Certiorari is warranted as this case demonstrates a clear effort by a two-party legislature to enact legislation which discriminates *only* against independent voters who may choose to run against party candidates in a state legislative election.   "...the primary values protected by the FirstAmendment 'a profound national commitment to the principle that debate on on public issues should be uninhibited, robust, and wide-open,' *New York Times v. Sullivan*, 376 U.S. 254, 270, are served when election campaigns are not monopolized by the existing political parties." *Anderson v. Celebrezze*, infra, at 561. "Protecting the Republican and Democratic parties from external competition cannot justify the virtual exclusion of other political aspirants from the political arena." *Anderson v. Celebrezze*, supra, quoting *Williams v. Rhodes*, supra, at 23, 31-32.

This case begs that certiorari be granted in order to finally put to rest the ambiguities

of open and closed primary elections, semi-open and semi-closed primary elections,

blanket primaries, etc. and to once and for all define "affiliation" so that states' so called

*disaffiliation* provisions can be put under the proper analysis identified by this Court in

*Storer v. Brown*, 415 U.S. 724 (1974) and *California Democratic Party v. Jones*, 530

U.S. 567 (2000).

This Court, on September 28, 2004, granted certiorari in the matter of *Clingman v.*

*Beaver*, SC No. 04-37, 363 F.3d 1048 (10th Cir. 2004) another conflict involving party

primary elections, political parties, voters and the state and alleged interests of

"affilliation." This case can logically be joined with *Beaver* and better serve judicial

economy and allow the Court to address the multiple issues involved.

Certiorari is further warranted as this may be the first case before this Court where the

political and association rights of *individual unenrolled* voters are at issue as opposed to

the more common conflict between states, the two major parties and new political parties.

> "Where a primary election is provided for by statute, the right to vote and
> have that vote counted fairly and properly is entitled to scrupulous protect-
> ion." *United States v. Classic*, 313 U.S. 299, 316-317. "The same tests
> regarding either discrimination or the transgresssion upon any constitu-
> tional right apply equally to primary and general elections." *Smith v.*
> *Allwright*, 321 U.S. 649, 654 (1944).

This Court's interpretation of the matter at hand will prove of great assistance to the

lower federal and state courts' in adjudicating similar state constitutional mandates involving political party associational rights, the associational rights of independent candidates and a state's *legitimate* interests.

Finally, the likelihood of this Court granting certiorari is high considering the defendant's failure to place the petitioner's name on the November ballot for state senate will result in irreparable harm; every election, its candidates and its issues being unique.

## II. Fair Probability That The Lower Court's Decision Was Erroneous

Similar to the facts in *Tashjian, supra*, Massachusetts state party members have no issue whatsoever with unenrolled voters participating in their primary elections. A swing vote of two million voters (50% of the total voting population) is certainly a benefit to any political party. However, in strict accordance with said Section 37, if the unenrolled voter asks for and casts a party ballot in *a presidential primary*, then he or she or she is *automatically* enrolled as a member of that party. Even if the newly enrolled voter complies with the specific language of Sec. 38, and subsequently unenrolls from such party before leaving the polls, he or she has, by act of law (Sec. 37), *established an affiliation* (albeit an extremely short one) with the party who's ballot he/she had requested and cast.

For every one of the state's 2 million unenrolled voters who exercised their statutory right to vote in the presidential primary, Mass. Gen. L. c. 53, Sec.'s 6 and 37 prohibit

them from gaining equal access to the ballot as a independent candidate for a state

legislative seat some eight months later. This is a burden that only independent candi-

dates are forced to bear; Republican and Democratic candidates for said legislative seats

vote in the Massachusetts presidential primary without such a restriction.

> "A burden that falls unequally on new or small political parties or on
> independent candidates impinges, by its very nature on associational
> choices protected by the First Amendment. It discriminates against those
> candidates and of particular importance against those voters whose
> political preferences lie outside of the existing political parties." *Clements
> v. Fashing*, 457 U.S. 957.

The United States Supreme Court has established a flexible standard of review when

faced with conflicting interests between a state's power to regulate elections and a voter's

constitutional rights to vote, to associate politically with others, and to gain ballot access.

Said standard of review has been articulated numerous times by the United States Sup-

reme Court and is set forth succinctly in *Tashjian v. Republican Party of Connecticut*,

479 U.S. 208, 213 (1986).

> We begin with from the recognition that "[c]onstitutional challenges to
> specific provisions of a State's election laws...cannot be resolved by any
> 'litmus-paper test' that will separate valid from invalid restrictions."
> *Anderson v. Celebrezze*, 479 U.S. 208, 214, quoting *Storer v. Brown*, 415
> U.S. 724, 730 (1974). "Instead, a court...must first consider the character
> and magnitude of the asserted injury to the rights protected by the First and
> Fourteenth Amendments that the plaintiff seeks to vindicate. *It must then
> identify and evaluate the precise interests put forward by the State as
> justifications for the burden imposed by its rule* (emphasis added) In
> passing judgment, the Court must not only determine the legitimacy and
> strength of each of those interests, it also must consider the extent to
> which those interests make it necessary to burden the plaintiff's rights.
> 460 U.S., at 789. See also *Timmons v. Twin Cities Area New Party*, 117
> S. Ct. at 1370 and *Werme v. Merrill*, 84 F.3d 479, 483 (1st Cir. 1996).

In assessing petitioner's claims, the district court only satisfied the first prong of the

*Anderson* test; determining the conflict of interests between a individual's voting rights

and the state's rights to regulate elections.

> "This case pits the right of citizen access to the ballot against the
> interests of the State in regulating elections, and indirectly, against the
> associational rights of the enrolled members of a political party."[2]

The final step under the *Anderson* analysis, "...In passing judgment, the Court must not

only determine the legitimacy and strength of each of those [state's] interests; it also must

consider the extent to which those interests make it necessary to burden the plaintiff's

rights." The appellate court, without ruling on the propriety of the lower court's analysis,

proceeded to answer the requisite questions as directed by the *Anderson* and made the

following findings:

"Unenrolled means not affiliated with any political party"

"Since the 1994 amendment, however, only the presidential primaries have had that
effect; an unenrolled voter may vote in all other primaries without losing her unenrolled
status."

"McClure is correct that the state's interests here are weaker than the interests stated in
*Storer*...This case is not on all fours with Storer; the state's interests at play in the Mass-
achusetts scheme are **far weaker** (emphasis added) than the state interests at play in
California..."

"McClure's final argument is that there were various alternative ways in which the state
could have tailored its scheme to achieve the same ends with less of an infringement on
his interests...and we will not speculate as to all of the other conceivable ways in which
the  state could have set up its framework."

---

[2] Plaintiffs take issue with the lower court's failure to address *their* associational rights.

Finally, the defendant mistakenly claims, and the appellate court agrees, that Sec.'s 6 and

37's discriminatory effect on unenrolled voters should be evaluated on a sliding scale to

measure what level of judicial scrutiny to apply in testing a statute's constitutionality;

however, as the Supreme Court quoted in *Dunn v. Bluemstein*, 405 U.S. 300, 343-344

(1972):

> "[A] significant encroachment upon associational freedom cannot be
> justified upon a mere showing of a legitimate state interest." *Bates v.
> Little Rock*, 361 U.S. at 524; *NAACP v. Alabama*, 357 U.S., at 463. For
> even when pursuing a legitimate interest, a State may not choose means
> that unnecessarily restrict constitutionally protected liberty."

And by the 10th Circuit Court of Appeals in *Beaver, supra* at page 7;

> "However, when states have statutorily restricted <u>parties</u> **[insert
> independent voters]** from defining the bounds of their own association,
> the Court has tended to employ strict scrutiny.   See, e.g., *Jones*, 530 U.S.
> 567, 582 (2000); *Eu*, 489 U.S. 214, 225 (1989)…"

M.G.L. c. 53, Sections 6 and 37 are unreasonably burdensome and discriminatory

and create an unconstitutional "chilling effect" on voter rights, when less burdensome and

less discriminatory means are easily available.

> "Precision of regulation must be the touchstone in an area so closely
> touching our most precious freedoms." *NAACP v. Buttons*, 371 U.S. at
> 438 .  "If the State has open to it a less drastic way of satisfying its
> legitimate interests, it may not choose a legislative scheme that broadly
> stifles the exercise of fundamental personal liberties." *Shelton v. Tucker,*
> 364 U.S. 479, 488.

Since 1994, the unenrolled voters of Massachusetts can vote in any *state party primary*

(with the exception of the presidential primary) without actually enrolling in the party.

Sec. 37, as amended, now discriminates against un-enrolled voters if they choose to run for state office during a presidential primary year and, via this disqualification, prevents other voters from associating with their candidate of choice.[3]  During any other time that Massachusetts' primary elections may be held *without* a presidential primary contest, any registered, unenrolled voter can appear at the polls and vote any party's ballot without any enrollment or affiliation issues whatsoever.  However, in the year of a presidential primary election, the unenrolled voter's act of requesting and casting a meaningful ballot comes at a price—a 'poll tax' if you will.

The net result of casting a meaningful ballot in a Massachusetts' presidential primary comes at a hefty price to the unenrolled voter.  **This "poll tax" was written and authorized by the state's two-party legislature, buried in the language of Mass. Gen. L. c. 53, Sec.'s 6, 10, 37 and 48 and requires payment only from independent voters who may wish to compete against a member of one of the two established parties for a state legislative seat in November.**

The state's justification for said automatic enrollment is that "*the national party by-laws require any voter casting a ballot in its party primary to be a party member.*"  (See defendant's opposition at p. 17 and Ex. B.).  This assertion is nothing more than a red herring; it is *the state legislature* which utilizes this national party rule of enrollment to create its own *affiliation* for the purpose of disqualifying independent voters from a state legislative ballot.[4]  **Where the state sees no party *affiliation* during all other state primary elections, and independent voters are not disqualified under Sec. 6 from**

---

[4] See also plaintiffs' claims of invidious discrimination; Complaint, Count VI.

gaining equal ballot access as a result of voting in *those* primary elections, how is it that the instantaneous enrollment and resignation provisions of Sec.'s 37 and 38, in a presidential primary election, somehow create an *affiliation* that does not exist during any other state party primary?

Even the dissenting opinion in *Tashjian* cites the absurdity of asserting such an "affiliation."

> "In my view, the Court's opinion exaggerates the importance of the associational interest at issue, if indeed it does not see one where none exists... The Connecticut voter who, while steadfastly re-fusing to register as a Republican, casts a vote in the Republican primary, forms no more meaning-ful an "association" with the Party than does the independent or the registered Democrat who responds to questions by a Republican Party pollster.  If the concept of freedom of association is extended to such casual contacts, it ceases to be of any analytical use."  ("[Not] every conflict between state law and party rules concerning participation in the nomination process creates a burden on associational rights...)" J. Scalia dissenting, quoting *Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 130-131 (1981) (POWELL, J., dissenting)

The defendant, Secretary of State, abuses its rights under article 1, section 4, clause 1 of the Constitution and utilizes its ability to set the Time, Place and Manner of elections to prejudice independent candidates for an apparently discriminatory reason. (See Compl. at Count II and plaintiffs' memorandum at p. 10-11).  Absent a valid reason, the state is prohibited from interfering with the plaintiffs' constitutional rights to vote, gain equal access to the ballot and associate politically with others.  As the Appellate Court noted in *The Cool Moose Party,* supra at 82, n.2.

> "We note that the parties seem to either ignore or misunderstand the appropriate standard of review. In defending the constitutionality of the challenged provisions, the State repeatedly cites article 1, section 4, clause 1 of the Constitution, which permits states to regulate the "Time, Places

and Manner" of elections. However, "[a] State's broad power to regulate the time, place and manner of elections 'does not extinguish the State's respon-sibility to observe the limits established by the First Amendment rights of the State's citizens.'" (emphasis added) *Eu*, 489 U.S. at 222 (quoting *Tashjian*, 479 U.S. at 217)."

Similarly, the Massachusetts statutes at issue here unconstitutionally hinder unenrolled voters attempts to broaden the base of public participation in and support for their activities by preventing them from running for political office and/or associating with other, similarly minded unenrolled voters in a state election.

In the instant case, the plaintiffs, as well as the state's 2 million unenrolled voters, seek to avoid being politically disenfranchised in their ability to not only gain equal ballot access in a state legislative election, but also to affiliate with potential independent candidates. Said disenfranchisement being imposed upon them as a result of accepting the Party's statutorily provided and much trumpeted *Super Tuesday* invitation to vote in its presidential primary election. The lower court in this matter *actually acknowledged and asserted* such a paternalistic defense on behalf of the defendants in its memorandum at page 6:

> "Nor is the State's interest any less legitimate in seeking in some small way to preserve the partisan integrity of the parties' nominating processes, even if only in selecting a candidate for president."

Mass. Gen. L. ch. 53, Sec. 37 forces an unenrolled voter to choose between exercising his statutory right to vote in a presidential primary or having his name appear on the November ballot as an unenrolled candidate for a state district office under the guise of a

compelling state interest which, according to the district court below, allegedly preserves political and elective stability.

Ironically, this permitted and encouraged Massachusetts primary election procedure is exactly the situation feared under the interparty raiding theory which the courts have consistently upheld as destabilizing the primary process and producing the potential for election chaos. In *Storer*, the justices equate the holding in *Rosario v. Rockefeller*, 410 U.S. 752, (1973), with their own. "We sustained the provision as "in no sense invidious or arbitrary," because it was tied to the particularized legitimate purpose," id. at 762, of preventing interparty raiding, a matter which bore on the "integrity of the electoral process." Id at 761.

Unlike the facts of *Storer*, this plaintiff did not make a cognitive choice to leave the "unenrolled" party; rath-er, this disassociation was imposed upon him as a re-sult of plaintiff having voted in the Democratic president-ial primary election; a right guaranteed under state law. (See Mass. Gen. L. c. 53, Sec. 37).

In the case at hand, the state, via its two-party leg-islature, not only seeks to protect the two, established parties out of paternalistic interest, it also seeks to pro-tect the same two parties from competition outside their political organizations with a discriminatory interest. The state legislature cannot have its cake and eat it too; util-izing two million unenrolled voters when their votes will be useful in a state primary election, yet claiming the same two million unenrolled voters to be prohibited from compet-ing against *themselves, or their party associates,* in a state legislative election.

> "There exists grave risks in legislation, enacted by incumbents of the
> major political parties, which distinctly disadvantages minor parties
> or independent candidates." See *Bachrach v. Secretary of the Com-
> monwealth*, 382 Mass. 256, 415 N.E.2d 832, at 839, quoting Burger, C.J.,
> concurring in part and dissenting in part, in *Buckley v. Valeo*, 424 U.S. 1,
> 251 (1976)(emphasis added).

See *Shapiro v. Thompson*, 394 U.S. 618, 634, (1969), "If a law operates to chill the

assertion of constitutional rights by penalizing those who exercise them it will be

unconstitutional unless supported by a compelling state interest" and *Skinner v.

Oklahoma*, 316 U.S. 535, 541 (1942). "A bur-den upon the exercise of fundamental

rights can be justified only upon a showing of the most compelling state interest."


Most damning to the defendants' opposition is the fact that independent candidates for

*state-wide or national* offices *are permitted*, under M.G.L. c. 53, to vote in a party pres-

idential primary in March without losing their right to run for political office in the state's

general election in November. (See defendant, Secretary of State's, Campaign Guide-

lines; Complaint, Ex. F and Addendum, p. 13). The start of their "window of eligibility"

to run as an independent candidate does not begin until the day *after* Massachusetts' state

presidential primary. For what appears to be only discriminatory reasons, the com-

mencement of the plaintiff's and other independent candidates for *in-state offices*

"window of eligibility" begins roughly one week earlier and eliminates their ability to

vote in said primary *and* meet the 90 day disaffiliation period required under Sec. 6. (See

plaintiffs' memorandum at p. 13). The appellate court notes the defendant's asserted

claim of the need to extend the signature period for state-wide and federal candidates and

gives credence to same. This is factually inaccurate. An independent candidate for state-

wide or federal office has until August to file his papers. Also, the newly enacted statute entitled "Chapter 173 of the Acts of 2004 "An act **establishing uniform** (emphasis added) primary procedures for unenrolled voters."

## III. Irreparable Harm, Injunctive Relief and The Balance of Equities

The facts and issues in this matter warrant the Court's issuance of a Preliminary Injunction Ordering the name of the plaintiff, Richard P.McClure, to be listed on the November 2, 2004general election ballot.

The standard for obtaining a preliminary injunction pursuant to Fed. R. Civ. P. 65 is well established in this circuit: "whether the plaintiff is likely to succeed on the merits, whether the plaintiff will otherwise suffer irreparable harm, whether the benefits of an injunction will on balance outweigh the burdens, and whether an injunction is consistent with the 'public interest.'" *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corporation*, 990 F.2d 25, 26 (1st Cir. 1993). In the First Circuit, the "likelihood of success" prong is the most important. *Cohen v. Brown University*, 991 F.2d 888, 902 (1st Cir. 1993). In fact, a finding that the plaintiff's constitutional rights have probably been violated "necessarily entails a decision as to the other preliminary injunction criteria as well." *Planned Parenthood v. Bellotti*, 641 F.2d 1006, 1022 (1st Cir. 1981).

"Discriminatory practices, indeed, any infringement of a constitutional right, constitutes irreparable harm... [T]here is no *de minimus* exception to the Equal Protection

Clause." *Monterey Mechanical*, 125 F.3d at 715 (citing *Associated General Contractors v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991). The plaintiffs in this action have set forth multiple constitutional harms and demonstrated their unlawful and continuing effects on the state's 2 million unenrolled voters; all under the color of state statute.

> "[t]he United States Supreme Court has held that the deprivation of a fundamental right constitutes irreparable harm requiring the issuance of a preliminary injunction.... Further, the threatened injury ... deprivation of the fundamental right to vote, outweighs any threatened harm that the injunction could do to the Defendants. In fact, it is hard to imagine what actual harm the Defendants themselves could suffer. Mere administrative inconvenience can never justify denial of a constitutional right." *Murphree v. Winter*, 589 F.Supp. 374, 381-382, (S.D. Miss. 1984).[5]

"[W]here the likelihood of plaintiff's success on the merits is great, 'the less weight is to be given to the defendant's loss.'" *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 927 F.Supp. 528, 535 (D.Mass. 1996), quoting, *FDIC v. Elio*, 39 F.3d 1239, 1248 (1st Cir. 1994).

"The public interest is "ill-served by the continued existence of unconstitutional ordinances, nor is it served by failure to enjoin defendant's discriminatory conduct." *Rubin v. City of Berwyn*, 553 F.Supp. 476, 481 (N.D. Ill 1982) (holding potential First Amendment violations should be enjoined pending litigation). "The vindication of constitutional rights is always in the public interest. *See Cohen v. Brown University*, 809 F.Supp. 978, 1001 (D. R.I. 1992), aff'd 991 F.2d 888 (1st Cir. 1993).

---

[5] See Rockefeller v. Powers, 917 F.Supp. 155 (E.D.N.Y. 1996); wherein the state was ordered to place the plaintiffs' names on the ballot only one week before the election.

"When the moving party can show that, without the requested relief, it may suffer a loss of a right that cannot be vindicated should it prevail after a full hearing on the merits, then issuance of the injunction is warranted." *Packaging Industrial Group, Inc. v. Cheney*, 380 Mass 609, 405 N.E.2d 106, 112 (1980). Plaintiffs in this matter have demonstrated that, without the injunctive relief requested, they will suffer constitutional losses of the greatest kind and that said losses have the very same impact on the state's 2 million similarly situated, unenrolled voters.

In the event this Court needs to review any claims of inconvenience or untimely delay on the part of the Secretary of State, *see McCarthy v. Briscoe*, 429 U.S. 1317 wherein this Court recognized that,

> "...courts were free to determine on the existing record in action for injunctive relief whether it would be appropriate to order independent presidential candidate's name added to general election ballot as remedy for what district court properly characterized as **'incomprehensible policy' violative of constitutional rights"** (emphasis added).

## D. CONCLUSION

For all of the aforestated reasons, as well as those asserted in petitioner's pleadings to date, the provisions of Mass. Gen. L. c.53, Sec.'s 6, 10, 37, and 48, as they apply to the Massachusetts presidential primary election, are violative of petitioner's right to vote, to have equal access to the ballot and freedom of association; said rights being protected by the First and Fourteenth Amendments to the United States Constitution; and that the

denial of same are a violation of Title 42, Section 1983 of the U.S. Code and Article IX

of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts.


Given the respondents,' as well as the lower courts,' failure to articulate any legitimate

or compelling reason for the restrictions imposed by said statutes on the petitioner's abil-

ity to participate in a presidential primary election and gain equal ballot access for a state

senate district seat, certiorari should be granted and the prayed for injunctive relief

Ordered.


Dated:  October 14, 2004



RICHARD P. McCLURE
8 Westford Street
Chelmsford, MA 01824
(978) 256-8822
BBO# 564713

*Pro se*

No. 04-

---

IN THE

Supreme Court of the United States

OCTOBER TERM, 2004

---

RICHARD P. McCLURE,
*Petitioner*

*v.*

WILLIAM F. GALVIN, Secretary of State for the Commonwealth of Massachusetts;
ELIZABETH DELANEY, Town Clerk, Town of Chelmsford;
JANE DOE, Chelmsford Election Poll Clerk
*Respondent.*

## CERTIFICATE OF SERVICE

I, Richard P. McClure, do hereby certify that I caused copies of the foregoing Application for Stay and Writ for Injunctive Relief to be served upon all counsel of record in the above captioned matter as well as the Clerks of the lower Courts. Said service made by mail this 14th day of October, 2004 with facsimile copy as well.

Richard P. McClure